Good afternoon. Please be seated. Court is reconvened. This is 4090593, Joel Schneider v. The City of Springfield. To the appellant, we have R. Steven Scott and to the appellee, Linda A. O'Brien. Mr. Scott. Oh, excuse me. Justice Stegman is not here today. He's ill. He'll be listening to this matter by tape. Oh, okay. Thank you. Justice Myerscough and Justice Appleton, as you know, my name is Steven Scott. I'm here today with my associate, Pam Hart, and also with my client, Joel Schneider, who is the appellant in this case. And for Linda O'Brien, may it please the court, we're here on behalf of the appellant in his continuing pursuit of his liberty to engage in a safe and peaceful activity on an appropriate area, which is adjacent to his home, without the unreasonable interference from the City of Springfield. That activity, of course, as is indicated in our brief, is the landing and taking off of his seaplane from the center basin of Lake Springfield. It's a large lake. It's over a mile wide and five miles long, and to dock his seaplane at his home. The unjustified intrusion that we complain of is the City's Ordinance Number 96073, which bans all flying devices without any distinction, thereby excluding seaplanes from ascending upon or descending from Lake Springfield. We're not asking the appellate court to require the City to have an airport or a seaport on Lake Springfield, because as the evidence indicates, seaplanes are special purpose aircraft. They don't require a certified area or an airport upon which to land. The doctor isn't prohibited from storing the vehicle, correct? I mean, that vehicle can be parked. It's just take off and landing, correct? Correct, but how you would park it on the lake would be, you take off. The distinction between motorboats and a seaplane, both being watercraft, is that the seaplane gains access to the lake by landing upon the lake, whereas a motorboat would be launched onto the lake. Seaplanes don't get launched. They land by air. So they would land by air, and then he would move to his home, which is located adjacent to the lake, and park the vehicle there. So there's no method of transporting a seaplane other than... Well, there is a... they have trailers, but they're generally not trailers that back into the water, although they are on pontoons. They usually are trailers where the seaplanes move off and move onto a pavement, and they take off from a pavement. Dr. Schneider could probably correct me, but that's how I've seen them used. But they are not devices because they're both an aircraft in the air and a watercraft in the water, which makes them absolutely unique from all the other aircraft that we're talking about here. is that they're intended to fly and land on the lake, and they're intended to be able to depart from the lake safely. That's one of the main reasons we're taking the position that we have. We think that the trial court in this case, their judgment was against all the manifest way of the evidence that we produced, showing that there was substantial, clear, convincing evidence that the city's ordinance was not valid, in that it effectively banned seaplanes by classifying them with all other types of flying devices, like balloons and parachutists, none of which are designated for water operation. And yet, seaplanes are unique in that that is their main purpose. The evidence showed, in contrast to all the... Mr. Scott, is that the... Is the problem with the ordinance that seaplanes are locked in with hot air balloons and other forms of aeronautical flight, or is the problem that the city is free to pick and choose what they allow and what they don't allow? Well, it's twofold. On the rational basis test, which the city ordinances are subject to, as are all municipal ordinances, whether they're home rule or under some direct power from the general legislature, they have to be a rational basis both for due process reasons and equal protection. Due process relates to denial of an individual's right to pursue a safe and peaceful activity. That can be done if the public interest is so great in forcing that denial, but there has to be some rational means or method to accomplish that public purpose. At the same time, the classification is important because if the classification is so arbitrary, meaning that it's made without any real justification or interest, and that has the effect of denying someone their equal protection, then that is also a problem. So it's a twofold problem, and a rational basis test is used both to show that due process has denied someone trying to pursue their liberty, and that they've been classified with a group that is impossible to deal with. We're not arguing for balloonists. We're not arguing for jet planes. We're not arguing for the CVAC plane or helicopters that fly over the lake on a regular basis. What we're arguing for is the seaplanes, which did operate safely on this lake prior to this ordinance being adopted. Without any incident whatsoever, we actually found someone that was part of that group that landed and took off from the lake on a regular basis. I think it was Springfield Aircraft Sales and Service, and there's no incidents whatsoever. What we think was that the city, perhaps thinking it was doing something in the public interest, must have just overlooked this or, through a broad, sweeping, arbitrary ordinance, swept in seaplanes which have none of the characteristics, other than being able to fly in the air, that the other flying devices have. Have you made any attempts with the city council to see if they'd like to change their mind on seaplanes? We started out, which is indicated in the evidence, and so I'm not going to argue something that isn't in the evidence. We started out and met with the city of Springfield, CWLP, which is in charge of the lake, and had multiple meetings with them, trying to impress upon them that this is a different, distinct type of device. There's no safety concerns at all, because we showed them how in northern Illinois, in a congested chain of lakes, seaplanes take off and land there all the time without any incidents. Far more congested, if you're familiar with that lake, than Lake Springfield. And recognizing that if we went to the city council, they would need CWLP's opinion, if you've ever been in front of the city council, both of you justices have been. You have to have the CWLP good graces or opinion in regard to this, and we were just absolutely stonewalled. No good reasons have ever been given, and that's part of our complaint in this case. Wasn't part of the evidence, I guess that was evidence from IDOT, the letter. The letter from IDOT was that there is a safe landing area on the center basin of Lake Springfield, for which there's no power transmission lines crossing the lake. There is a huge open area to land. We had five experts at trial, all of whom were airline experts, one with over 25,000 hours of flight time plus a seaplane expert, and they came and viewed Lake Springfield, so this is unbelievable. It's a great place to land because what we're landing in are rivers and streams and small areas, and this is just an absolutely safe, good area to do that. And that's what shows this broad sweep and this arbitrary and capricious action by the city in this particular case. Really, it's City Water, Light, and Power. The city, and they adopted the City Water, Light, and Power. The city made the ordinance. At the time when this ordinance was made, they didn't have the Aldermanic form that they have today. If you recall back in 1979, they had the Commission form of government, and just to show how arbitrary this thing was, there was, as indicated in the evidence, a sailboat accident. All of us heard of that in our early careers here. The sailboat ran into some power lines in a western base, it's a base in Illinois, and two people were killed. They buried those power lines, logically, but sailboats were never banned from the lake. Motorboats were not banned from the lake. They banned aircraft from the lake. My recollection of the map is that the map still shows that there are electrical lines over the lake in various areas. There's a spot where there's some electrical lines near the Lindsay Bridge on the north side of the Lindsay Bridge. Those are the closest ones to this area, but if you saw the map, I think it was Plants Exhibit 5 and 6, where it was laid out by Dale Russ, the IDOT, Division of Aeronautics person, he showed what the path would be to come in there. It wasn't anywhere near those power lines. And as Dr. Schneider testified at trial, you're significantly above that before you come down and land. And his small seaplane would land at an area of 500 feet or less, and it just takes up a very small amount of room to land, and taking off pretty much the same way. But even if you can land safely, you still have to demonstrate by clearing convincing evidence that the ordinance was not enacted for a legitimate government purpose, safety, or that the ordinance was not a reasonable means of achieving that purpose. Correct. And that's where I have a hard time. Well, we can't say that an interest that the city has in public safety is not a reasonable purpose. But purpose alone is not enough to satisfy the due process and equal protection, rational basis standard that we have. You have to have a legitimate means that is not arbitrary, and that does not classify parties who are attempting to exercise their liberty in some type of a discriminatory manner. What we have shown, and what our direction was at the trial court, was to show that it is not a legitimate means to ban seaplanes because there are no safety concerns, and there are no incidents of any problems with seaplanes in the city of Springfield, in Lake Springfield, or any place in Illinois that have been shown. In fact, we gave the 13-year study that showed that there were only three collisions in the entire United States, none in Illinois by the way, between a seaplane and a watercraft. And the purported reasons for the city's ordinance were we have potential hazards with lake residences that are near the lake, with watercraft on the lake, and with power lines that cross the lake. If we have a seaplane which now can easily fly over the lake, there's nothing to stop that. We have medevac helicopters that regularly fly over the lake. Some of the routes out of Capital Airport fly over the lake. That won't change. It's the landing on the lake that is the question, and that's what our evidence showed without any contradiction from the city whatsoever. No evidence was put in by the city, and our evidence showed that there is no possible hazard to the homes around the lake Springfield. This is a charge, if you would, that is based on some type of a fear based on misinformation and is sometimes couched in the terms of fact. In fact, the city in their brief for the very first time brought up arguments of seaplane safety, apparently trying to draw on rulings of other distinguishable cases that, well, don't we have a propeller in the front of this plane, and it's an exposed propeller, so that's dangerous to swimmers on the lake and users of the lake. But actually, if you look beyond that, the exposed propeller is actually a safety thing. People can see the propeller. Motorboats on the lake have a submerged propeller. Far more dangerous to swimmers and potential other boaters or people thrown out of boats. And with seaplanes, as the testimony showed, they have the ability to hover above the area, they have the ability to come down, and if some watercraft should come into their area, which previously wasn't there, they can pull up immediately and get out of that landing. Almost to the very point Dr. Schneider testified to, the very point of touching base, you can pull up and get out of it. Is that how you pronounce that word, hover? Hover or orbit they use. I've always said hover, which is obviously wrong. Maybe you're correct. I could be wrong. There's hovercraft, hovercraft, I guess. This is not necessarily a hovercraft or hovercraft. It is a seaplane and has the ability to orbit and pull up. That was the testimony at trial. I've been trying to find the answer to this question. Both parties claim that the standard here of review is manifest way to the evidence. And what I'm hearing you argue is the constitutionality of the ordinance, which, if that's the case, would be a de novo review. Well, I think in this case the standard is that where we have an ordinance, it is presumed valid, and the burden is passed to the party attacking ordinance to show by clearing convincing evidence that it does not satisfy the rational basis standard. And I think the case we cited in that was the Lew-Owen case that said that when we're looking at the decision of a trial court in having made that decision on whether the decision that they made that this ordinance is or is not a valid ordinance because it satisfies the rational basis test is the manifest way to the evidence. Because in our case, that's what we believe the standard is. And we believe that the city has omitted the standard, and we could not find a different standard than that. If we had a state statute that was going up to the Supreme Court or something like that or an appellate court initially, that may be a de novo review. And I think there was a case cited in here where we had a de novo review. But the issue of constitutionality under Article II of the Illinois Constitution, Article XIV of the Federal Constitution, U.S. Constitution, does relate to the rational basis test. And there we apply the, when reviewing the trial court's judgment, the manifest way to the evidence standard. And we think using that standard in this case, all the evidence that has been produced has in fact been produced by the plaintiff. We just took the pounds of evidence that were included in this and everything else that is all on the plaintiff's side. And the city has taken a position, well, we're the city, we can do this. And even though they have given reasons why they're doing this to protect surrounding residences, to protect watercraft, and to avoid running into power lines, when we showed all of that, really didn't apply in this case because all these types of activities of being concerned about those items being protected are existing in other areas of the state and seaplanes operate without any threat or hazard or any incidence. So again, all we're dealing with is fears that have been somehow turned into a claim of fact that really don't exist. And that's where we get down to something being rational or not rational. The cases that we cited, when we cited the Buckley case and we cited the Rocking H case, in those particular cases, we were demonstrating and showing that when the appellate court took a look at the facts, they saw that the sense of injustice was apparent and alerted once they looked at the clear facts. If we looked at the Buckley case, it may have seemed very logical initially to have banned motorcycles from all the parks in the Springfield Park District because some motorcycles had gone off-road and were driving close to people that were using the parks. But when we looked closer to that and saw that those off-road motorbikes were since outlawed and there was no reason to outlaw the heavier road bikes, which were subject to the same traffic rules as were vehicles, it was not a rational basis. In that Rocking H case, we had a similar situation where maybe they wanted to put special hours for hay racks and horses because they were considered hazards to motor vehicles, which are far more common in those areas. But when we looked beyond that, we saw there were no studies made, there were no incidents of crashes between horses and vehicles, between hay racks and vehicles, and this essentially would put people out of business. Once again, there was no rational basis. And we look in our case, we have no studies. We don't have any incidents of any problems. We don't even have a single report that the city has produced that they even considered the safety of seaplanes when they passed the sweeping regulation. There is absolutely no basis. But what says they have to do that? I will grant you, you did a phenomenal job at the presentation of evidence, but I'm not finding, well, first of all, the cases that you cited, I think were mostly non-home rule units prior to the granting of the home rule powers. But this is a very unusual case. And from my understanding of reading the cases, it requires you to do more than say that this plane is safe if operated correctly. And I agree. But we do have to show what the rational basis was, and the court is absolutely correct that those earlier cases I showed, including the case that this appellate court decided in Buckley, were prior to the 1989 case of AAA services, which has been raised multiple times in the briefs and by the court. But there were two cases done after that that were appellate court cases from the Northern District. One was the Lew Owen case that we cited, and that was Lew Owen versus Schomburg. Schomburg was a village of over 25,000 people and was a home rule unit. We had the City of Evanston versus the City of Chicago decided also in, I think they're both 1996 cases, both were home rule units in that case. And one of the things was brought up in that City of Evanston versus City of Chicago was the fact that the City of Chicago didn't do any studies. We can't tell you, Judge Myerscough, that the law is that you must do studies. What we're suggesting is if you want to establish that you have a rational basis for the means adopted to accomplish your goal of whether it's public welfare or protecting residences, a study would be a good indication that you did have a rational basis and did not just make a wide, paintbrush, brash sweep that wiped everything out that was a lawful and peaceful use. That's where the liberty of someone is taken, and that's what is unconstitutional. My light went off. I don't know if you want me to continue. We'll hear from you in a minute. Okay. Thank you. Ms. O'Brien. If you may please support. My name is Linda O'Brien, and I represent the City of Springfield. I think there was a little back history about the lake here at Lake Springfield. I do want to add a few points. We have 736 residential sites on that lake, 20 clubs, six utility plants, one for water and the other five for power. There are bridges, roads, railroads, boat ramps, marinas, beach house, and camps all located around the lake of Lake Springfield. And the purpose of that is to show that it's not safe to land a seaplane on the lake? No, to give you part of our rational basis for our concern about the residential lots. What's the impact of those clubs and camps and houses and power plants? Well, with power plants in particular, we have safety concerns. The power plants are the sole source of drinking water for the City of Springfield. Isn't there a no-fly zone around there by the FAA? We are not attempting to get involved in no-fly zones or what the FAA does. They control the airspace. The City is preempted out of that. The City's ordinance deals with ascents and descents. Let me ask you the pointed question. What danger to the power plant or the water plant is there to allowing the plaintiff here to land a seaplane on the main basin of Lake Springfield, specifically? Because we cannot control the ascents and descents. Even if you said they will land in this spot, there is no way to control a seaplane operator who is making an ascent or a descent from using that spot or where they go or how they commit their ascent and descent. We don't have a way to control that. We have a way to control the way watercraft gets onto our lake by boat ramps or docks and by the roads leading to those where we can control access. Seaplanes you can't control access with an ascent and a descent. It's not like you're landing at the Capital Airport where you have a landing strip and that is the only place they can land. They won't land off in the field unless it's a disaster. They're going to land on the landing strip. When you're talking about a lake surface, even though they say this is the spot that IDOT says would be perfect for a landing strip, we can't control boats from crossing that. We can't control seaplane operators from using that. And we feel that the danger that they possess by ascents and descents, which is the same between a seaplane and any other flying device, they all come up and they all go down, that by not being able to control that, we are risking the recreational boat user who may be out on the water and not be looking to the skies because they're looking to the waterfront. So the boat would have right of way, right? I believe that when a seaplane is on the water, they are subject to the rules of watercraft, which we have no issues with. I believe the testimony did say that when they were landing they were supposed to give way to watercraft. Or suffer liability. Correct. But as we all know, Lake Springfield is a man-made lake wholly owned by the City of Springfield. As evidenced by evidence in 1979, when there was an accident on the lake with the HOBY craft, we get sued. If there is an accident with a seaplane on Lake Springfield, the city will be sued. The city will be responsible and people will look to us for the fact that we did not ensure their health, safety, and welfare by allowing them to land seaplanes on Lake Springfield. Well, in the 1979 HOBY case, the liability wasn't the water. The liability was the electric lines, right? Correct. Which, in combination with the mast hitting the lines, and the city on the lines, and the city on the water, had nothing to do with the liability. If the water had not been present, the electrical lines would not have caused electrocution. And we feel that we are not discriminating against seaplanes from other flying devices because they all have one thing in common. They all ascend and descend. If someone wants to load their seaplane by ramp into Lake Springfield and use it as a watercraft because it is considered to be a watercraft when it is on the lake, the city has no problem. If someone wants to fly their seaplane according to FAA rules in airspace, we have no control. We're preempted. Our issue is ascents and descents by any flying device, including seaplanes. Seaplanes are very different from watercraft in a couple of ways. Watercraft operate on one level, on the water. Seaplanes operate on three different levels. They operate in the air, they operate on the water as a watercraft, and they operate on the land. Seaplanes are also able to land on land. Dr. Schneider keeps his seaplane at Capital Airport where he can land on concrete. It is not the only place you can land a seaplane is on a lake. We would have no problem if he wants to put his seaplane into the lake by boat ramp and drive it around like a watercraft. He only has to follow the rules of a watercraft. Is there a means for obtaining an exemption or an exception to an ordinance? I think by doing that, we would be opening ourselves up to an equal protection argument. Because at this right now, all persons who are similarly situated are treated the same by the ordinance, whether they're residents of the lake... But that wasn't the question. Is there a method by which you can seek one? Someone can always come and ask the council of the city to pass an ordinance. So it requires another ordinance? Yes, it would require an ordinance. Because our ordinance is very clear that there are no exceptions in our ordinance as it presently exists. And has all of this evidence presented by the plaintiff about the safety of seaplanes been presented to the city council? I do not know if the plaintiff has presented that information to the city council or not. I'm not aware of whether or not they've requested an ordinance. I was curious whether Corporation Council had shared this with the mayor and the powers that be. They are aware of the case. They are aware of the transcripts. I am not involved in a unit of Corporation Council's office that drafts ordinances. My unit of Corporation Council, I don't deal with drafting ordinances or in the ordinance process, I do code enforcement and bankruptcy and collection issues. We talked a little bit, they've talked a lot about the Evanston case. I do want to point out to the court that most of the cases they cite have to do with streets and roads. The lake is not a street or a road. It is not part of commerce. It is not part of a navigable waterway. It is very different from a street or a road, which is, the local governments are preempted out of several areas by the state government. And street and roads are treated differently if you look at street and road cases. Also, the city of Evanston case involved a highly traveled commercial district on the border between two entities, Evanston and the city of Chicago. And I don't feel applies in this case because of the fact that it had to do with the road, it had to do with the commercial district, it had to deal with fire and ambulances, and that the test they applied to it was a little bit higher because they felt that this was an inter-government or two-entity issue. We're saying that our issue is a locality issue. It is a local government issue. The lake is owned by the city. The marginal land is owned by the city. The land the plaintiff's home sits on is owned by the city and leased from the city. And that we feel that that does not bring in other issues as far as a higher level of looking at things like the Evanston case had. And when you look at the Buckley case, which was also decided by this court, we feel that they're distinguishable because not only did the Buckley case have to do with streets, albeit a park district street, it had to do with the differences between motorcycles and motor vehicles, which are very, very minor because they both operate on the road. They can, to some degree, go off-road, granted motorcycles can go more than motor vehicles, but they both operate on tires, they both stay on the same surface, they both use some form of petrol. When you're talking to seaplanes and watercraft, you're talking about two totally different things. We've talked about how they operate on different planes. A watercraft only operates on the water, nowhere else. Whereas a seaplane can operate on the air, the water, or by landing on land, which makes it a very different entity than a watercraft. We're also concerned about security around the lake. Because while when we passed this, we had a rational basis for the residents of the Health, Safety, and Welfare, the residents, the watercraft users, and the power line issue. We also, at that time, though it was not in the preamble, and it's not required to be in the preamble, had an issue where we were the sole source of drinking water for the city, as well as water to take care of the generators for the power plant. Of all of those things, the residential users, there's still an existing need to protect their health, safety, and welfare. The watercraft users, there's still an existing need to protect their health, safety, and welfare. There's still an existing need to protect the sole source of drinking water, the water for the electric generators. Yes, some of the power lines are down. And at trial, what was the evidence that a seaplane of this nature would have a deleterious effect on the health and welfare of the power plant, the lake, the boat users, and the neighbors? Okay. There was evidence about the security changes that have taken place at the lake since September 11, 2001. There is an area of the lake that has now been restricted to watercraft traffic and has buoys up, because we are attempting to keep people away from the plant as far as we can. And I presume that would apply to seaplanes? Yes, it would. Even if you opened it up to the landing in the central basin? Seaplanes have to function as watercraft and are bound to same rules when they're on the water surface. Yes, they have certain guidelines under the FAA about where they can fly. We're concerned about the fact that we can't control access and the danger of collisions, the danger of not being able to control access because of the fact that seaplanes, while they say there's a landing strip, we can't stop because they are not under control by the facility out here at Capital Airport because it's not required under radar. We can't control how they land on that lake. It would be uncontrolled. Other than the fact that we do know from the IDOT letters, they do require the permission of a local entity controlling the area to land a seaplane. We would have no way, if the ordinance is overturned, to permit seaplane landing, to control where they land, how they land, or when they land. The only control we would have over them is when they're operating as watercraft users in which they're subject to the watercraft user's rules, such as 35 miles an hour is the maximum speed during daytime, 5 miles an hour at night. Wouldn't it be easy enough to have the lake police implement regulations on a seaplane? The only part that they could really control would be ascent and descent, and I don't know how the lake police would be able to control that because once a plane has taken off, it's hard to get them back. Doesn't the doctor live on the lake? Well, yeah, but if we change the ordinance, anyone can use a seaplane on Lake Springfield because we can't legislate an ordinance that would be legal that would let just Dr. Schneider land a seaplane on the lake. If we open this up, anyone who has a seaplane would be permitted to land on the lake. And how many seaplanes are there in the state of Illinois? I don't have the figures in front of me. They were entered in the plaintiff's argument. There are several hundred. There are lots of seaplanes in the United States. They do fly around from lake to lake. But I don't have those exact facts, to be honest. We feel like, basically, we feel that everyone is being treated the same. We feel that the lake's primary purpose, when it was created, was as a sole source of drinking water. That's the reason, if you look at the thing that the lake was created, yes, recreational uses have always been there. Does drinking water state the argument in front of the trial court? It was mentioned in front of the trial court. We briefed our arguments, Your Honor. We did not argue closing arguments in front of the trial court. Also, they talk about how we don't provide studies, and we don't have anything but the preamble. First of all, case law says you don't look at the preamble for what an ordinance means unless it's unclear. It's obvious this is a clear ordinance. Nobody's argued that. What we don't know, and we haven't been able to produce, nor are they, anything that went into this decision, which, as long as it's rationally related, and it's still, in our argument, rationally related now, that's the issue. Back then, they didn't have to keep public records like we do now. It's 30 years ago. So there are no transcripts. There are no recordings. There are no public documents. But 30 years ago, public record laws were very, very different. And I'm sure things were discussed. Our counsels do not usually just make decisions without a lot of thought. But we have had no documents, nor do they. And I guess I'd like to sum up by saying that we feel that the ordinance is rationally related to the health, safety, and welfare of the residential users, the recreational users in watercraft, and as far as the sole source of water for drinking and electrical power generation for the city of Springfield. And if there are no further questions, we ask the court uphold the judgment of the trial court. Thank you, counsel.  No problem, Mr. Scott. In response to some of the court's questions, there are 75 seaplane licenses issued for seaplane operators having residences in the state of Illinois. That was Exhibit 8 of the exhibits submitted by the plaintiff at trial. But I'd prefer to address directly to the questions that were continually asked here, represented by the city. One was that the lake is the sole source of drinking water, and we have concern for the power plants here. None of this ever raised at trial, raised for the first time in its brief. And they also said that a preamble can't be used to evaluate the ordinance. All we had to look at at trial was a preamble, because we were not given any reasons why the city was trying to ban seaplanes. We guessed at what other reasons they would have, which included the environmental reasons. So we brought in environmental evidence that said the seaplanes are far more environmentally friendly to the lake and uses on the lake than our motorboats, which we have hundreds on this lake registered from time to time. We showed that the exhaust of a seaplane is exhausted above the water instead of pumping exhaust and oil into the water. We showed that the weight that seaplanes make is only 8 inches high when a seaplane is moving on the water, compared to some of these motorboats, which we've all had the experience of throwing waves out several feet high, all to the negative effect of shoreline and other deleterious effects on the environment. When I asked the only witness that the city produced at trial that if we showed that seaplanes were environmentally friendly, would that be a consistent use for the lake water with the city's concerns? And the answer was yes, I guess it would be. So while we have motorboats over the lake spilling oil and gas into the lake, we have two areas on the lake with gas pumps to fill up motorboats on the lake, we have an environmentally friendly seaplane that is being barred because they have concerns of drinking water. How rational is this? We have a sailboat running into power lines, banning seaplanes. How rational is this? And this goes on and on, and all we're hearing is, we're the city. But the city doesn't operate for the city. And they said, well, we may be the subject of lawsuits. Well, we all know that cities have immunity. If cities pass ordinances, then they're generally required to enforce them. But they don't pass negative ordinances. Are they going to be sued because they had an ordinance for a safe flying device? We don't have cases like that, and we would have cited a few of them. That's part of the problem here. And then the city said, through their council, they're concerned about controlling access. If we had regulations here, we probably wouldn't be here. We're here on a prohibition entirely. We proposed regulations. We proposed no night flying. We proposed landing only on an area that is designated the central basin of the lake. We proposed you're not going to land when you have rough water. We proposed no landing during the period of time that we would have the 4th of July Memorial Day and Labor Day weekend. All of this was proposed. All of this was shot down because we're the city. So the city is operating the lake for the benefit of the city. I mean, this is part of the reason people are tired of governments today. Cities and governments should be operating their property for the people. Here we have the people interested in exercising their liberty in a safe and peaceful manner, yet we have the city, on the other hand, making an ordinance to fix a problem that doesn't exist. And that's when we get to the rationality of this. It isn't rational. And when they try to distinguish between Buckley, where we had motorcycles and automobiles being the same, motorcycles and automobiles clearly have some differences. One's on two wheels, one's on four or more wheels, one's enclosed, one isn't. And clearly there's some differences between seaplanes and watercraft. But the question here is as to access to the roadway in the case of Buckley or to the lake service in the case of Schneider that we have here. We're a watercraft with rights to operate on that lake. The only distinction is we land on the lake instead of being launched on the lake. And on the one hand the city says we would have no problem if the plaintiff in this case launched his seaplane and then drove around the lake. Yet in their brief they're saying how about this exposed propeller? In what sense would it really be for a seaplane to just drive around the lake? The real purpose is to be able to fly, land on the lake. And I don't know if you happen to see the Olympics the first night of that. They actually showing scenes from Vancouver. And here we have this small seaplane, roughly the same size as Dr. Schneider's, which is in the evidence also, flying over a bridge in Vancouver making no noise whatsoever, ready to land on the lake. And we're saying why don't we have that liberty here? And the reason is the city makes an irrational ordinance, has no reasons to support it at trial, tries to create reasons in its brief, but those reasons are invalid. It's irrational, it should be considered unconstitutional, should have been considered unconstitutional by the trial judge, and his order was entered against the manifest way to the evidence. You realize we have to find this ordinance a wholly arbitrary act. Correct. And I think it does satisfy as wholly arbitrary. I don't know the distinction between arbitrary and wholly arbitrary. Arbitrary generally means that someone is making a decision without any kind of motivation. No problems here whatsoever. It's made out of someone's pure discretion. And had the city had incidents of seaplane crashes, of problems with seaplanes, or there was something else like the other cases that have been cited where we have varying levels of the surface water so it would be inappropriate for seaplanes, and the Georgia Power case was one that was cited by the city. There we had the Army Corps of Engineers actually making a decision because there are hydraulic changes in the water that seaplanes wouldn't be safe there. If that was the case, we wouldn't be here today. If there had been regulations that we didn't comply with for the landing on the lake, we wouldn't be here today. If we violated the regulations, just like enforcing the speed limit against boats on the lake, and if someone was given a ticket for that, we wouldn't be here today. It's just the outright prohibition that we're concerned with. And there's nothing to stop the city from going back if this court rules in favor of the plaintiff. And making an ordinance with those prohibitions, we can give them pages on how to make the prohibitions, not prohibitions, the regulations. We can give them pages on what to do and what other places do, where seaplanes should land safely. And as I said before, we're not dealing with motor boats, traffic on the lake, or residences on the lake that are realistically threatened by seaplanes. They're not threatened. All we have is unsupported fears that are not fact. And that should not be the basis of an ordinance. Thank you, Mr. Scott. We'll take this matter under advisement and adjourn for the day.